NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0098n.06

No. 13-5824

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 04, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KATHERINE REEVES, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| TENNESSEE FARMERS MUTUAL INSURANCE | ) | COURT FOR THE MIDDLE |
| COMPANY, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Katherine Reeves works for Tennessee Farmers Mutual Insurance Company ("Farmers"). Her supervisor denied her a promotion and instead hired a man, after telling Reeves that he would not hire a woman for the job. Reeves immediately raised the issue with her superiors. Within hours, Farmers rescinded the job offer to the man and reopened the hiring process. This time Farmers hired a qualified woman—but not Reeves. Reeves sued Farmers under Title VII and the Tennessee Human Rights Act, claiming that the initial denial was on the basis of gender. The district court granted Farmers's motion for summary judgment. We affirm.

I.

Farmers has a regional claims office in Waynesboro, Tennessee. The office is headed by a Regional Claims Manager and staffed by Property Claims Representatives ("adjusters"), Auto

Field Claims Representatives, and Claims Assistants. Katherine Reeves has worked there as a Claims Assistant since 2006.

In December 2010, an adjuster position opened. Farmers gave Waynesboro's Regional Claims Manager, Mike Delk, authority to fill the position. It did not provide Delk with any hiring guidelines.

Reeves told Delk that she wanted to apply for a promotion to the position. Delk replied that he would not hire a woman as an adjuster because he had "safety concerns" about women in the job. Delk also called other Regional Claims Managers to ask whether female adjusters performed differently from their male peers.

Reeves applied for the position anyway. To prepare for her interview with Delk, Reeves called Michelle Burns, Farmers's Assistant Vice President for Claims. During the phone call, Reeves told Burns about Delk's comments. Burns responded that there was nothing that Reeves could do if Delk did not want to hire her.

Delk selected and interviewed nine job candidates—eight men and one woman (Reeves). After the interviews, Delk's top two choices were Reeves and Greg Martin, who then worked as a golf pro. Delk offered the adjuster position to Martin, subject to a drug test and background check. Martin accepted.

That same day, Delk told Reeves that he had hired Martin instead of her. Reeves immediately called Byron Garrett, Farmers's Vice President for Claims, and told him about Delk's comments and why she thought the hiring process was unfair. After the call, Garrett immediately called Delk, who confirmed Reeves's account. Garrett then told Delk that the hiring process "was on hold until he heard back from [the] home office."

Hours later, Garrett and Farmers's General Counsel, Ed Lancaster, and Assistant General Counsel, Julie Bowling, held a conference call with Delk to discuss Reeves's allegations. Delk admitted that he had made comments that could be construed to mean that he would not hire a woman for the job. He also said he had excluded potentially qualified candidates—both men and women—because they lacked a college degree, and that he had disregarded the Claims Department's general preference for hiring internal candidates. During the call, Garrett decided to start over with the hiring process. He chose Rick McDonald, a Farmers Assistant Vice President, to lead it. That evening, Delk called Martin and told him to "sit tight with the offer" because "some things were going on at the office."

Two days later, Lancaster told Reeves directly that Farmers was reopening the hiring process, and asked if she wanted to apply. She did.

Delk had no involvement in the reopened process. Instead, McDonald and Bowling reviewed the previous applications (including Reeves's and Martin's) and two other applications from women. They selected six applicants for interviews, including Reeves and Martin. McDonald thought Reeves was anxious and difficult to follow during her interview. Bowling thought that Reeves rambled and did not respond to questions; she also thought that Reeves was overly critical of her coworkers.

After weighing several factors, McDonald and Bowling independently ranked their top three candidates. They both ranked Bryan Bone first, Takashli Otey second, and Greg Martin third. Bone withdrew his application. McDonald and Bowling then offered the job to Otey, who accepted it. Otey was a female applicant from another Farmers's office, who had impressed McDonald and Bowling during her interview. She had also worked at Farmers for seven years,

including the previous three years as an Office Claims Representative. Otey's supervisor gave her a positive recommendation, and she was otherwise qualified for the job.

In February 2012, Reeves sued Farmers, alleging gender discrimination in violation of Title VII and the Tennessee Human Rights Act (the "Tennessee Act")), among other claims. Farmers moved for summary judgment. The district court granted summary judgment to Farmers because Reeves could not establish a prima facie case for gender discrimination. Specifically, the court found that Reeves could not show that a similarly-situated male filled the position since Farmers ultimately hired a qualified woman for the job. This appeal followed.

## II.

We review de novo the district court's grant of summary judgment. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009).

Title VII prohibits employers from "fail[ing] or refus[ing] to hire . . . or otherwise discriminat[ing] against any individual . . . because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). The Tennessee Act prohibits the same thing. *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 464 (6th Cir. 2001); *Jackson v. Bd of Educ. of Memphis City Schs. of Memphis, Tenn.*, 494 F. App'x 539, 543 n.1 (6th Cir. 2012).

Reeves may prove gender discrimination using direct or circumstantial evidence. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Direct evidence "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Reeves may also prove gender discrimination using circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. 411 U.S. 792, 802-03 (1973). Reeves must first establish a prima facie case that she was denied promotion based on gender discrimination.

*Id.* To do so, she must prove that she was a member of a protected class; that she applied for and was qualified for a promotion; that she was denied the promotion; and that an "individual of similar qualifications who was not a member of the protected class received the job[.]" *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

Here, Reeves argues that Delk's offer to Martin was an adverse employment action to her even though Farmers rescinded the offer almost immediately. Delk's offer to Martin did not effect significant change in anyone's employment status, because as it turned out (almost immediately, in fact) Martin was never actually hired for the job. Reeves responds that Delk had full authority to hire Martin, and thus his offer must have taken effect. But our inquiry is practical, not metaphysical. In response to Reeves's complaint, Farmers immediately rescinded Martin's offer and started the hiring process over. Delk's offer to Martin therefore never ripened into an adverse employment action for either of Reeves's claims. A materially adverse employment action "constitutes a significant change in employment status, such as hiring, firing, [or] failing to promote[.]" *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *cf. Keeton v. Flying J, Inc.*, 429 F.3d 259, 263 (6th Cir. 2005) (employee suffered no materially-adverse employment action when he was fired and his employer reinstated him within the day); *Bowman v. Shawnee State University*, 220 F.3d 456, 462 (6th Cir. 2000) (employee's temporary removal from a position for 10 days was "a *de minimis* employment action that does not rise to the level of a materially adverse employment decision").

In summary, once Farmers found out about Delk's (attempted as it turns out) discrimination, it did exactly what it was supposed to do. Reeves's claims fail as a matter of law.

The district court's judgment is affirmed.